IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **MICHAEL SANFORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:12-CV-306 (MTT)** |
| | ) | |
| | ) | |
| **ROBINS FEDERAL CREDIT UNION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## ORDER

Before the Court is the Defendant's Motion to Dismiss for Lack of Subject Matter

Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or for Failure to State a Claim pursuant

to Fed. R. Civ. P. 12(b)(6).[1]  (Doc. 11).  For the following reasons, the Defendant's

Motion to Dismiss is **GRANTED**.

### I.        Background

The Plaintiff filed this lawsuit August 1, 2012 (Doc. 1) and amended his

Complaint to add a general damages clause on September 7, 2012 (Doc. 8).  He

alleges that he presented the Defendant with two "Electronic Funds Transfer

Instruments" to set off and discharge debts associated with two bank accounts.  He

further alleges that the Defendant accepted these instruments "by operation of law" yet

---

[1] Both parties have also filed motions for summary judgment.  (Docs. 14, 18).  Because the Court
dismisses the Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), it does not consider the
parties' summary judgment motions or the evidence filed therewith.  The summary judgment motions are
**denied as moot**.

did not release titles to vehicles serving as security for the debt toward which the purported payments were made.  As such, the Plaintiff concludes, the Defendant is violating several sections of the Uniform Commercial Code ("UCC") and committing fraud and theft by deception.  The Plaintiff also adds that the Defendant is violating his "secured property rights pursuant to the 4th and 5th amendments to the Federal Constitution."  (Doc. 8).  In his Response to the Defendant's Motion to Dismiss, the Plaintiff further states that "[u]nderlying federal law regarding this action, such as House Joint Resolution 192(June 5, 1993), Public Law 73-10 and Public Law Chap 48, 48 Stat.112 [sic] require federal jurisdiction.  Plaintiff should be allowed to argue federal law in federal court."  (Doc. 15, ¶ 13).

The Defendant argues, in its Motion to Dismiss, that the Plaintiff's constitutional claims do not raise a question of federal law sufficient to give this Court jurisdiction.[2] (Doc. 11).  And even if they do, the Defendant contends the Plaintiff cannot state a claim for relief because the loans were never actually discharged.  According to the Defendant, the two instruments at issue were drawn on a Magnolia State Bank account belonging to the Plaintiff, but Magnolia State Bank dishonored the instruments when they were presented because the account was closed.  Consequently, the Defendant states it never actually received payment, and the Plaintiff's obligations remain in full. But whether or not the Plaintiff made a valid payment, he has failed to state any federal claims upon which relief can be granted.  This Court, therefore, does not address the parties' underlying factual dispute.

---

[2] The Defendant did not reply to the Plaintiff's Response to its Motion to Dismiss, and therefore did not address any potential issues posed by Public Law 73-10.

2

## II.    Discussion

### A.  Standard of Review

To survive a motion to dismiss, a complaint not need contain "detailed factual allegations," but must "give the defendant[s] fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations omitted).  The complaint must contain specific facts to " 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570).  Further, "at the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1261 (11th Cir.2006).

However, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – that the pleader is entitled to relief." *Iqbal,* 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir.2002).  Further, a complaint is not sufficient "if it tenders [only] 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).  And where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

3

When reviewing a pro se complaint, the Court liberally construes the complaint. However, the Court will not, and cannot, rewrite the complaint to include facts that are not alleged and claims that are not articulated.  *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006).  Further, a pro se litigant is still required to include allegations respecting all material elements of the claims asserted, and bare legal conclusions attached to facts will not suffice.  *Davilla v. Delta Air Lines*, 326 F.3d 1183, 1185 (11th Cir. 2003); *see also McNeil v. United States,* 508 U.S. 106, 113 (1993) (providing that, although pro se pleadings are to be construed liberally, "procedural rules in ordinary civil litigation" should not be interpreted "so as to excuse mistakes by those who proceed without counsel").

**B.  Analysis**

In this case, the Plaintiff first attempts to raise federal constitutional questions by asserting deprivation of property rights provided by the Fourth and Fifth Amendments. *See* U.S. Const. amends. IV, V.  But even if the Court liberally construes the pro se Plaintiff's Complaint, and even if the Court assumed these amendments proscribe conduct the Plaintiff alleges, his constitutional claims have no plausible foundation because these constitutional amendments do not apply to the Defendant.

It is well settled that the Fourth and Fifth Amendments restrict only *government* actions, not those of private parties.  *See, e.g.*, *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (addressing the Fourth Amendment); *Pub. Util. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952) (addressing the Fifth Amendment).  Robins Federal Credit Union is not a government actor.  It is a private, non-profit corporation chartered by the National Credit Union Administration pursuant to the Federal Credit Union Act, 12

4

U.S.C. § 1751 *et seq.  See Brand v. Robins Fed. Credit Union*, 969 F. Supp. 778, 780

(M.D. Ga. 1997); *Montford v. Robins Fed. Credit Union*, 691 F. Supp. 347, 349 (M.D.

Ga. 1988).  And though the Defendant may be organized pursuant to federal law, courts

have declared that actions taken by federal credit unions are typically not

"'governmental action' for purposes of Constitutional restrictions."  *Jesinger v. Nevada*

*Federal Credit Union*, 24 F.3d 1127, 1132 (9th Cir. 1994).

> Although the federal government regulates credit unions, regulation alone is not
> enough to make a private entity and a government agency interdependent.  The
> control and management of a federal credit union is not vested in the federal
> government, but democratically in the members themselves and in their duly
> elected board of directors….[T]he slight degree of government involvement in the
> business of federal credit unions does not warrant applying Constitutional
> requirements to these democratically controlled, nonprofit cooperatives.

*Id.* (internal citation removed) (quotation marks removed). *See also Palmer v. Mann*,

2009 WL 3171961 at *2 (W.D. Ky.); *Smith v. Delaware First Fed. Credit Union*, 395 F.

Supp. 2d  127, 130 (D. Del. 2005); *Francis v. Northeast Cmty. Fed. Credit Union*, 2003

WL 22697267 at *1 (N.D. Cal.); *Heiskala v. Johnson Space Center Fed. Credit Union*,

474 F. Supp. 448, 453 (S.D. Tex. 1979).

Consequently, the Defendant's actions in this case, even if they occurred exactly

as alleged by the Plaintiff, are not subject to the constitutional restraints the Plaintiff

asserts.  The Defendant's decision to not release the Plaintiff's car titles, valid or not, is

a decision made by a private actor that falls outside the purview of the federal

Constitution.  That leaves the Plaintiff's Fourth and Fifth Amendment claims without any

plausible foundation and renders them wholly insubstantial and frivolous.  The Plaintiff's

Complaint is thus insufficient insofar as it purports to state a Constitutional claim upon which relief can be granted.

Additionally, the Plaintiff's reference to H.J. Res. 192, 73rd Cong. (1933), enacted by Pub. L. No. 73-10, 48 Stat. 112-13 (1933), is also insufficient to state a claim upon which relief can be granted.  House Joint Resolution 192, titled, "To assure uniform value to the coins and currencies of the United States," states that obligations requiring payment "in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby" are against public policy, and that U.S. currency is legal tender for all debts.  *See* H.J.R. Res. 192, 73d Cong. (1933); *see also Bryant v. Wash. Mut. Bank,* 524 F. Supp. 2d 753, 759 & n .9 (W.D. Va. 2007); *McLaughlin v. Citifinancial Auto Credit, Inc.*, 2010 WL 2377089 at *6 (D. Conn.). Enactment of this resolution by Public Law 73-10 suspended the gold standard in the United States.  *See McLaughlin*, 2010 WL 2377089 at *6; *Johnson v. United States*, 79 Fed. Cl. 769, 774-75 (2007).  The Plaintiff declares that presentment of the electronic funds transfer instruments "discharged [his] debt upon receipt of the instrument" and that his "[p]ayment was in full accord with" the resolution and public law.[3]  (Doc. 15, ¶ 3). He adds that, as a result of this law, "there exists an obligation of the Federal Government (Treasury) to discharge debts, in exchange for giving them credit to create and control the money system."  (Doc. 15, ¶ 3).  The Plaintiff later explains that "[t]he

---

[3] At this point, the Plaintiff also cites in passing "U.S. Constitution Article 1. Section 10 lawful money,etc, etc" and "subsequent codification."  This mere listing of these potential sources of law is not a statement of a valid legal claim.  Further, it is not clear how the Plaintiff intends to apply U.S. Const. art. I, § 10.  But to whatever extent he lists it to imply that the system of lending money in the United States is unconstitutional, he is wrong.  *See Julliard v. Greenman (The Legal-Tender Cases)*, 110 U.S. 421, 4 S. Ct. 122, 28 L.Ed. 204 (1884).

discharge part of the system was established because of the bankruptcy of the united [sic] States of America in 1933."  (Doc. 15, ¶ 9).

Frankly, it is not clear to this Court how the Plaintiff finds support for his claims in the United States' suspension of the gold standard.  His argument in this regard is vague and, at times, less than coherent.  To some extent, it appears the Plaintiff hopes to advance a watered-down version of claims other plaintiffs have unsuccessfully attempted via Public Law 73-10, such as the "vapor money" theory, "unlawful money" theory, or "redemption" theory.  *See McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201 (D. Conn. 2010) (discussing these theories in depth and collecting cases that "universally and emphatically" reject them).  Such claims are "equal parts revisionist legal history and conspiracy theory," *Bryant*, 524 F. Supp. 2d at 758, and share a common thread in their use by plaintiffs seeking to avoid debt repayment.  These theories appear to all somehow rely on various supposed consequences flowing from the 1933 suspension of the gold standard.

For example, one tenant of "redemption" theory suggests that the United States has been bankrupt since suspending the gold standard in 1933, and that, as a result, the dollar is nonredeemable.  Citizens thus became creditors for a bankrupt system, and the Federal Reserve Note became a debt note with no intrinsic value – or so the story goes.  *McLaughlin*, 726 F. Supp. 2d at 211.  Another variation suggests that when an individual executes a promissory note in favor of a bank, he has actually provided the bank "money."  The bank then deposits this "money" into its own account, lists it as an asset on its ledger, and lends it back to individual.  Through bookkeeping procedures, the bank has supposedly created money even though it does not actually have gold-

7

backed funds available to lend, and the note is thus void from the outset. *See, e.g.*, *Rudd v. KeyBank, N.A.*, 2006 WL 212096 (S.D. Ohio).

It is not clear whether the Plaintiff is making one of these specific arguments or whether he merely adopts some of their broader themes regarding the American monetary system.  Parts of his Response to the Defendant's Motion to Dismiss have clearly been cut and pasted from the Internet,[4] so it is possible he is borrowing language he does not himself fully understand or has included only a small piece of one of these theories.  As best this Court can determine, the Plaintiff's central thesis regarding Public Law 73-10 is that, by virtue of the 1933 "bankruptcy" of the country and suspension of the gold standard, American citizens provided credit to the federal government to create and control the money system, giving rise to the government's obligation to discharge their debts.  To the Court, this implies the Plaintiff believes it is the government's ultimate responsibility to repay his car loans.  But even if this were true, it does not state a valid claim for relief, as the government is not a party to the loan the Defendant provided the Plaintiff.  As stated above, the Defendant is not a government actor.  Moreover, even if the Plaintiff had more clearly described how this public law applies to his circumstances, he still would not state a claim upon which relief can be granted: Courts have widely rejected arguments seeking relief pursuant to theories based on Public Law 73-10.  *See McLaughlin*, 726 F. Supp. 2d at 214 (collecting cases).  This Court now does the same: To whatever extent the Plaintiff

---

[4] For example, a portion of ¶ 3 in his Response appears to have been lifted directly from a document at www.thctrust.org, a website that promotes various oddball ideas for how one might discharge a debt.

appeals to Public Law 73-10 as the basis for this action, he has failed to state a claim upon which relief can be granted.

Accordingly, the Plaintiff's purported federal question claims are **dismissed with prejudice** pursuant to Fed. R. Civ. P. 12(b)(6).[5]  Without these federal claims, the Plaintiff's Complaint invokes only state law and Georgia's version of the UCC against a nondiverse defendant.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3).  Any remaining state law claims are therefore **dismissed** pursuant to Fed. R. Civ. P. 12(b)(1) and may be filed in a state court.

For these reasons, the Defendant's Motion to Dismiss (Doc. 11) is **GRANTED**.

**SO ORDERED**, this 20th day of November, 2012.


S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[5] Given the Defendant's status as a private actor and the general frivolity of claims asserted pursuant to Public Law 73-10, any amendments to the Complaint related to these purported causes of action would be futile and non-curative.  Therefore, none will be permitted.

9